UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT BLANK,

Plaintiff,

v

BENZIE COUNTY BOARD OF COMMISSIONERS *et al.*,

Defendants.

______________________________/

Case No. 1:10-cv-201

HON. JANET T. NEFF

**OPINION**

Plaintiff Robert Blank, a former Sheriff of Benzie County, Michigan, brought this case in state court against Defendants Benzie County Board of Commissioners and the County Administrator/Controller, and Defendants removed the case here. Now pending before the Court is Defendants' Motion for Summary Judgment (Dkt 41), to which Plaintiff filed a response (Dkt 44). Having fully considered the written briefs, the stipulated statements of fact, and the accompanying exhibits, the Court finds that the relevant facts and arguments are adequately presented in these materials and that oral argument would not aid the decisional process. *See* W.D. Mich. LCivR 7.2(d). For the following reasons, the Court grants Defendants summary judgment of the federal claims in this case and remands the state-law claims to the state court from which Defendants removed this case.

## I. BACKGROUND

Plaintiff Robert Blank is a former sheriff of Benzie County, Michigan (Statement of Material Facts [SMF][1] ¶ 1). He was elected sheriff in November 2000; took office on January 1, 2001; and served as Benzie County Sheriff until December 31, 2008 (*id.*). Before being elected sheriff, Plaintiff was employed with the Benzie County Sheriff's Department (hereinafter "the Department") from March 1979 until December 31, 1997, the effective date of his retirement (*id.* ¶ 2).

During the course of his employment with the Department, Plaintiff was promoted to the rank of sergeant in approximately 1986-87, and was appointed as undersheriff by then Sheriff Paul Stiles in 1989 (SMF ¶ 3). Plaintiff served as undersheriff from 1989 until 1996, when Sheriff Stiles removed Plaintiff as undersheriff and returned him to the rank of sergeant (*id.* ¶ 4). The reason for removing Plaintiff as the undersheriff and returning him to the rank of sergeant was so that Plaintiff would be eligible for membership in the Command Officers Association of Michigan (COAM), the union representing senior ranked officers (*id.* ¶ 5). However, COAM refused to allow Plaintiff to join the union, and, in January 1997, then Sheriff Vance Bates demoted Plaintiff from the rank of sergeant to a deputy (*id.* ¶ 6).

As a result of the demotion, and the reduced compensation accompanying the demotion, Plaintiff filed suit in May 1997 against the Police Officers Association of Michigan (POAM), the Benzie County Deputy Sheriff Association, Benzie County, Benzie County Sheriff Bates, and COAM (SMF ¶ 7). The parties to the lawsuit reached a settlement agreement wherein Plaintiff retained the rank of sergeant; Benzie County opened a sixty-day retirement window under which any Benzie County employee with twenty years of service would be eligible, with no age limit;

[1]Plaintiff admitted each of Defendants' statements of material facts (Dkts 41-1, 44-1).

Benzie County agreed to buy three years of service for Plaintiff to add to his years of service with the Department, thereby making Plaintiff eligible for the sixty-day retirement window; and Plaintiff agreed to retire by the end of 1997 (*id.* ¶ 8).

Following his retirement effective December 31, 1997, Plaintiff began receiving monthly pension payments from Municipal Employees' Retirement System of Michigan (MERS) in early 1998 (SMF ¶ 9). Benzie County is a MERS participating municipality (*id.* ¶ 15), and Benzie County has not adopted and/or established any other retirement plan other than MERS (*id.* ¶ 16).

Plaintiff received approximately $1,290.00 in monthly pension payments from MERS (SMF ¶ 10). Plaintiff's monthly pension payments continued throughout his term as Sheriff from 2001 until 2008; however, in April 2001, Plaintiff received notice from MERS that his monthly pension payments would be suspended beginning in May 2001, due to the fact that Plaintiff had earned $10,000 in wages for that calendar year (*id.* ¶ 11). Similarly, for the calendar years 2002 and 2003, MERS informed Plaintiff of the suspension of his monthly pension payments upon earning $15,000 in wages for those calendar years (*id.* ¶ 12).

The reason for the suspension of monthly pension payments was due to the annual earnings limitation language contained in § 31, subsection 1 of the MERS Plan Document of 1996 (hereinafter "the Plan Document") (SMF ¶ 13). Section 31, subsection 1, of the MERS Plan Document of 1996, provided the following:

> Payment of the retirant's retirement benefit shall be suspended if the retirant becomes employed by the participating municipality ... from which the retirant retired. Suspension of payment shall become effective the first day of the calendar month next following the date the member earns more than $10,000 in gross compensation during a calendar year on account of the reemployment until the retirant attains age 70.

(Dkt 43-1, Dfs.' Ex. I). Before taking office, Plaintiff was aware of the suspension of pension payments from MERS upon earning "a certain amount of money as a Sheriff" (*id.* ¶ 14).

On May 12, 2004, the MERS Retirement Board repealed the annual earnings limitation language contained in § 31, subsection 1, of the Plan Document (SMF ¶ 13). Beginning in calendar year 2004, Plaintiff received monthly pension payments from MERS for the entire twelve months in the given year (*id.* ¶ 12).

Plaintiff filed three versions of complaints in Benzie County Circuit Court against the Benzie County Board of Commissioners and the Administrator/Controller. First, on July 3, 2008, Plaintiff filed a Complaint (Dkt 1-1) alleging the following five counts:

I. Complaint for Writ of Mandamus
II. Breach of Contract
III. Unjust Enrichment
IV. Quantum Meruit
V. "Equal Protection violation under both the state and federal constitutions"

Plaintiff's August 26, 2008 First Amended Complaint (Dkt 1-3) added a sixth count:

I. Complaint for Writ of Mandamus
II. Breach of Contract
III. Unjust Enrichment
IV. Quantum Meruit
V. "Equal Protection violation under both the state and federal constitutions"
VI. Violation of the ADEA and Elliot-Larsen CRA

Plaintiff's February 23, 2010 "First [sic] Amended Complaint" (Dkt 1-4) eliminated two counts and alleged the following four:

I. Complaint for Writ of Mandamus
II. Unjust Enrichment
III. "Equal Protection violation under both the state and federal constitutions"
IV. 42 U.S.C. § 1983

On February 26, 2010, Defendants filed a Notice of Removal to this Court, alleging that this Court has federal question jurisdiction over the subject matter of this case pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367 (Dkt 1 at ¶ 15). Plaintiff did not challenge the removal; indeed, the parties agreed on a jurisdictional statement in their April 27, 2010 Joint Status Report filed in this Court (Dkt 12). The parties subsequently stipulated to a six-month administrative stay of any further proceedings, "due to health concerns of the Plaintiff" (Dkts 15, 16).

Following a pre-motion conference in July 2011, the Court issued a briefing schedule, permitting the parties to brief Defendants' proposed dispositive motion (Dkt 32). The parties engaged in settlement negotiations with the Magistrate Judge in February 2012, negotiations that proved to be unsuccessful (Dkt 47), necessitating resolution of this pending motion.

## II. ANALYSIS

### A. Motion Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Slusher v. Carson*, 540 F.3d 449, 453 (6th Cir. 2008); *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). The party moving for summary judgment has the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). Once the moving party has made such a showing, the burden is on the nonmoving party to demonstrate the existence of an issue to be

litigated at trial. *Slusher,* 540 F.3d at 453. The ultimate inquiry is "whether the state of the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

**B. Federal Claims**

**1. *Equal Protection***

In Count III of his February 23, 2010 First [sic] Amended Complaint (Dkt 1-4), Plaintiff asserts a violation of his rights under the Equal Protection Clauses of the United States and Michigan Constitutions. U.S. CONST. amend. XIV; MICH. CONST. art. 1, § 2. Plaintiff alleges that "Defendants are applying the entire compensation package to all other similarly situated elected officials of Benzie County, except Plaintiff" inasmuch as "Defendants have failed to provide payment of Plaintiff's pension monies" (Dkt 1-4, First [sic] Amended Compl. ¶¶ 31-33). Plaintiff further alleges that "Defendants have articulated no rational basis for their actions in denying full application of the compensation package to the Plaintiff" (*id.* ¶ 34).

In support of summary judgment, Defendants argue that Plaintiff's equal protection claim is "inapplicable" in the public employment context (Dkt 41-1 at 17-19), and, alternatively, that they have not violated the Equal Protection Clauses because Plaintiff is not similarly situated to other Benzie County elected officials and Defendants had a rational basis to not fund Plaintiff's second retirement account with MERS (*id.* at 14-17).

Plaintiff responds that he was treated differently from all other elected county officials in that he was denied a pension benefit that was given to all other elected officials, regardless of whether they were drawing a pension from another source (Dkt 44 at 4). According to Plaintiff, "[j]ust because MERS would not allow Plaintiff to enroll in their pension program does not negate the fact that a pension was one of the fringe benefits afforded to elected officials by Benzie County" (*id.* at

4-5). Plaintiff does not otherwise address the import of the public employment context in which he brings his equal protection claim.

The Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. Michigan's equal protection provision is coextensive with the Equal Protection Clause of the federal constitution. *TIG Ins. Co., Inc. v Dep't of Treasury*, 629 N.W.2d 402, 407 (Mich. 2001); *Crego v. Coleman*, 615 N.W.2d 218, 223 (Mich. Ct. App. 2000).

It is well settled that the Equal Protection Clause "protect[s] persons, not groups," and that the Clause's protections apply to administrative as well as legislative acts. *Engquist v. Oregon Dep't of Agriculture*, 553 U.S. 591, 597 (2008) (internal citation omitted). However, the United States Supreme Court has found a crucial difference, with respect to constitutional analysis, between the government exercising "the power to regulate or license, as lawmaker," and the government acting "as proprietor, to manage [its] internal operation," particularly in its review of state action in the context of public employment. *Id.* (quoting *Cafeteria & Restaurant Workers v. McElroy*, 367 U.S. 886, 896 (1961)). The Supreme Court determined that, given the "common-sense realization that government offices could not function if every employment decision became a constitutional matter," *Connick v. Myers*, 461 U.S. 138, 143 (1983), "constitutional review of government employment decisions must rest on different principles than review of ... restraints imposed by the government as sovereign," *Waters v. Churchill*, 511 U.S. 661, 674 (1994) (plurality opinion). *Engquist, supra.*

The Supreme Court concluded that "the class-of-one theory of equal protection—which presupposes that like individuals should be treated alike, and that to treat them differently is to

classify them in a way that must survive at least rationality review—is simply a poor fit in the public employment context." *Engquist*, 553 U.S. at 605. According to the Supreme Court, ratifying a class-of-one theory of equal protection in the context of public employment would impermissibly "constitutionalize the employee grievance." *Id.* at 609 (quoting *Connick*, 461 U.S. at 154). The Court determined that "[t]he federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies." *Id.* (quoting *Bishop v. Wood*, 426 U.S. 341, 349 (1979)). Further, the Court observed that "[p]ublic employees typically have a variety of protections from just the sort of personnel actions about which [the public employee at bar] complains, but the Equal Protection Clause is not one of them." *Id.*

Plaintiff's claim here similarly lies outside the ambit of the Equal Protection Clause. The Court agrees with Defendants that the decision to not provide supplemental retirement benefits to Plaintiff when he was ineligible to participate in MERS is the type of "discretionary decisionmaking" that is "an accepted consequence of the discretion granted" employers (Dkt 41-1 at 18, quoting *Engquist*, 553 U.S. at 603). "To treat employees differently is not to classify them in a way that raises equal protection concerns. Rather, it is simply to exercise the broad discretion that typically characterizes the employer-employee relationship." *Engquist*, 553 U.S. at 605.

Even if Plaintiff could properly maintain a class-of-one equal protection claim within the public employment context, the Court also agrees with Defendants that Plaintiff has not demonstrated an issue of fact meriting trial as to whether he was treated differently than other similarly situated Benzie County elected officials in all "material" or "relevant" respects. *See TriHealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 790 (6th Cir. 2005); *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). As Defendants point out (Dkt 41-1 at 15), and

Plaintiff does not contradict, Plaintiff was the only elected official who had retired from employment with the county, started receiving monthly pension payments following his retirement, and subsequently became re-employed with the county in his capacity as County Sheriff. Under § 31 of the Plan Document, Plaintiff was not eligible to become a MERS member during the period of re-employment and was not entitled to a second pension payment plan. "[D]isparate treatment of persons is reasonably justified if they are dissimilar in some material respect." *TriHealth*, 430 F.3d at 790.

Further, even assuming arguendo that Plaintiff demonstrated an issue of fact as to whether he was treated differently than other similarly situated officials, Defendants possess a rational basis for their actions. "A 'class of one' plaintiff may demonstrate that government action lacks a rational basis either by negativing every conceivable basis which might support the government action, or by showing that the challenged action was motivated by animus or ill-will." *Taylor Acquisitions, L.L.C. v. City ofTaylor*, 313 F. App'x 826, 837 (6th Cir. 2009) (quoting *TriHealth*, 430 F.3d at 788).

Specifically, Defendants reference the prohibitions in § 31 of the Plan Document of MERS that prohibited a second retirement fund for Plaintiff, and testimony from the Chief General Counsel for MERS explaining that the rationale for prohibiting a retiree of a participating municipality from MERS participation upon reemployment with the same municipality is to prevent the "double-dipping" that occurs when a member both receives a pension and is paid compensation while working for the same employer (Dkt 41-1 at 16, citing *Connolly v. McCall*, 254 F.3d 36, 42-43 (2d Cir. 2001) (determining that "there is nothing irrational about the state deciding that at any one time a public employee should not both be accruing a new public pension and receiving an old public

pension"). Moreover, Defendants assert that there is no constitutional or statutory obligation upon the Board to provide Plaintiff with supplemental retirement benefits outside of MERS (*id.* at 17).

In sum, even if Plaintiff, a public employee, may properly maintain his equal protection claim, Defendants have borne their burden of showing that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law on the equal protection claim Plaintiff alleges in Count III.

**2. *Section 1983***

In Count IV, pursuant to 42 U.S.C. § 1983, Plaintiff alleges that he enjoys "a constitutionally protected property interest in being compensated for his duties as Sheriff of Benzie County" and that "[a]cting under color of State law, Defendants have taken deliberate action to deny Plaintiff retirement benefits while he was Sheriff of Benzie County" (Dkt 1-4, First [sic] Amended Compl. ¶¶ 37, 39). Defendants argue that Plaintiff does not have a constitutionally protected property interest in the retirement benefits while he was Sheriff of Benzie County (Dkt 41-1 at 19-20). Defendants also argue that Plaintiff's § 1983 claim is barred by the applicable statute of limitations (*id.* at 23).

The parties agree that Michigan's three-year statute of limitations for personal injury claims, MICH. COMP. LAWS § 600.5805, applies to § 1983 claims when the cause of action arises in Michigan (Dkt 41-1 at 21; Dkt 44 at 13). *See Carroll v. Wilkerson*, 782 F.2d 44, 45 (6th Cir. 1986). The limitations period begins to run when "the plaintiff knows or has reason to know of the injury which is the basis of his action." *Sevier v. Turner*, 742 F.2d 262, 272-73 (6th Cir. 1984) (indicating that "[a]lthough state law provides the statute of limitations to be applied in a § 1983 damages action, federal law governs the question of when that limitations period begins to run"). "A plaintiff

has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Id.* at 273.

Plaintiff argues that the limitations period began to run in this case on December 31, 2008, when he left office (Dkt 44 at 12). However, the Court is persuaded that the three-year limitations period instead began to run, at the latest, on March 21, 2002, when Plaintiff was informed by MERS that he was not eligible to receive a second retirement benefit from MERS. Plaintiff's February 23, 2010 claim under § 1983 is therefore time-barred.

Even assuming arguendo that Plaintiff timely alleged his § 1983 claim, the claim does not survive Defendants' motion on the merits. In order to state a claim under § 1983, Plaintiff must allege that: (1) he was deprived of a right, privilege or immunity secured by the Federal Constitution or law of the United States; and (2) the deprivation was caused by a person acting under color of state law. *Flagg Bros. v. Brooks*, 436 U.S. 149, 155-57 (1978); *Brock v. McWherter*, 94 F.3d 242, 244 (6th Cir. 1996). To the extent that Plaintiff again argues that Defendants deprived Plaintiff of his equal protection rights under the Fourteenth Amendment (Dkt 1-4, First [sic] Amended Compl. ¶ 40), Plaintiff's argument lacks merit for the reasons previously stated.

Plaintiff also claims that Defendants deprived Plaintiff of property without affording due process of law by denying additional retirement benefits to Plaintiff while he was Sheriff of Benzie County (Dkt 1-4, First [sic] Amended Compl. ¶ 42). However, "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it", and the person "must have more than a unilateral expectation of it." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). Specifically, the claim of entitlement must be "legitimate." *Id.*

Plaintiff asserts that "[t]he real issue in this case is not whether Plaintiff is entitled to a retirement benefit while serving as Sheriff, but how that retirement benefit should have been paid since he could not be included in the MERS system" (Dkt 44 at 11). However, Plaintiff has not cited any statute, rule, or regulation that would support his claim that he was deprived of a right to retirement benefits. Conversely, as Defendants have emphasized throughout their briefing, § 31 of the Plan Document expressly rendered Plaintiff ineligible to be a member of MERS retirement system upon his re-employment by the same municipality from which he had retired. In short, respondent has not shown that he was deprived of liberty or property protected by the Fourteenth Amendment.

In sum, even if Plaintiff timely filed his § 1983 claim, Defendants have borne their burden of showing that there is no genuine dispute as to any material fact and that they are also entitled to judgment as a matter of law on the § 1983 claim Plaintiff alleges in Count IV.

**C. State-law Claims**

Having resolved the federal claims in Plaintiff's February 23, 2010 First [sic] Amended Complaint, the Court exercises its discretion under 28 U.S.C. § 1367(c)(3) and declines supplemental jurisdiction over the state-law claims in Count I (Writ of Mandamus) and Count II (Unjust Enrichment). *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("[A] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims."), cert. den. 127 S. Ct. 1832 (2007). The Court remands these claims to the state court from which this case was removed.

## III. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' Motion for Summary Judgment (Dkt 41). Specifically, the Court grants Defendants summary judgment on Counts III and IV of Plaintiff's February 23, 2010 First [sic] Amended Complaint and remands Plaintiff's state-law claims in Counts I and II to the state court from which this case was removed. An Order consistent with this Opinion will be entered. Further, because the Order resolves the last pending claim in this case, the Court will also enter a Judgment. *See* FED. R. CIV. P. 58.

DATED: March 30, 2012

/s/ Janet T. Neff
JANET T. NEFF
United States District Judge